**FIDELITY & DEPOSIT CO. OF MARYLAND
v. CLAIBORNE PARISH SCHOOL
BOARD et al.**

District Court, W. D. Louisiana, Shreveport
Division. August 23, 1929.

No. 1528.

P. M. Milner, of New Orleans, La., and
Cook & Cook, and Thatcher, Browne, Porteous & Myers, all of Shreveport, La., for
plaintiff.

McClendon & Seals, of Homer, La., and
Thigpen, Herold, Lee & Cousin, of Shreveport, La., for defendants.

DAWKINS, District Judge. The allegations of the petition in this case were
fully stated in the opinion filed herein on
January 25, 1926 [11 F.(2d) 404], passing
upon the plea to the jurisdiction and the
motion to dismiss. The answer, in substance, admits the contract and its performance by the contractor, Ben F. Casey, as
well as payment to the Planters' Bank of
Haynesville, La., of $12,642.59, balance of
the contract price, all as alleged, but in justification thereof avers that the defendant
school board recorded its acceptance of the
completed building in the mortgage office of
Claiborne parish, La., on January 18, 1924,
and that no claims for material or labor
were served or filed with it or in said office within the 45 days provided by the act
of the Legislature, No. 224, of 1918. For
this reason it claims the payment to the
bank on the order of the contractor of the
balance due was lawful.

The jury has been waived and the parties have submitted the case to the court
upon an agreed statement of facts, the substance of which is as follows:

The contractor completed the building
and it was accepted by the board, who filed
its written acceptance with the clerk of
court and ex officio recorder of mortgages
and conveyances on January 18, 1924, but,
instead of recording in the mortgage book,
he recorded it in the conveyance records
of the parish on March 19, 1924. Both the
conveyance and mortgage records are kept
in the same room of the clerk's office, who
files all documents for record. The Act No.
224 of 1918 applies to the contract in this
case. Certain of the creditors of the con-

tractor, who had furnished labor and materials, to wit, Fitzgerald Plumbing & Heating Company for the sum of $5,675, H. H. Bain for the sum of $412.36, and Victoria Lumber Company for the sum of .$3,699.11, obtained judgments against the plaintiff in the state court which it paid, together with interest, costs, etc., aggregating $10,202.54. Upon completion of the building there was due the contractor the sum of $12,642.59, and on December 31, 1923, he gave an order upon the schoolboard as follows: "Please pay the Planters Bank of Haynesville, Louisiana balance of funds on contract price and extra work due me on the Haynesville Grammar and High School buildings in the town of Haynesville, Louisiana, and oblige."

The said board "tentatively accepted and filed the order" referred to on December 31, 1924, and "on April 3, 1924, acting upon advice of its counsel by check No. 248, paid over to the Planters Bank of Haynesville the entire balance due Ben F. Casey on the Haynesville High School building, $12,642.59." The Victoria Lumber Company filed its mortgage lien in the mortgage office of the parish on March 7, 1924, which was recorded in the mortgage records April 9, 1924; the Fitzgerald Plumbing & Heating Company also filed its lien on March 8, 1924, which was likewise recorded April 9, 1924; and H. H. Bain filed his lien on March 20, 1924, which was recorded April 12, 1924. The mortgage certificate of the clerk of court, ex officio recorder of mortgages, attached to the statement of facts and dated April 3, 1924, shows recordation of liens of the three above claimants, together with others, and also the contract and bond for the erection of the building. On "March 7th and 16th, 1924" attorneys for Fitzgerald Plumbing & Heating Company sent a registered letter to the school board, inclosing sworn statement covering amount of claim for labor and material furnished in constructing both the grammar and high school buildings; attorneys for Bain also sent to the school board, by registered letter, an attested account of his claim on March 9, 1924, "duly recorded lien in the mortgage office" of said parish; and the attorneys for Victoria Lumber Company on March 7, 1924, sent a "sworn account" of its claim to the school board by registered letter, and a copy thereof was filed in the mortgage office on March 7th and recorded—all of which letters and statements were received and were for the amounts which plaintiff had to pay in settlement of the

judgments obtained against it. The attorney for the plaintiff "in the latter part of June, 1924," learned that the school board had paid over the entire balance due the contractor, and "immediately thereafter had Ben F. Casey to secure from Edward F. Neild, architect, a final certificate No. 10, which the said Ben F. Casey, for value received, indorsed to the order of the" plaintiff, "surety on his bond. * * * *" The attorney for the plaintiff then went to Homer, the parish seat of Claiborne parish, and on July 9, 1924, wrote the president of the school board, advising him of the receipt of the certificate, No. 10, from the architect and its indorsement to plaintiff by the contractor, that the payment to the bank "was unauthorized and illegal," and the plaintiff company would hold it responsible for the payments under the contract as provided therein, and liable to it for damages resulting from such action. Thereafter plaintiff addressed other communications to the school board, seeking to be reimbursed for the payments made to the above claimants, but the board declined to comply therewith, and this suit was filed on March 30, 1925.

As I see the matter, the question to be decided is as to whether, as a matter of law, the defendant school board, after notice of the existence of these claims, which admittedly it received before the money was paid over to the bank on Casey's order, could thereby relieve itself from responsibility to them and to the surety who was bound with the contractor for their payment.

It is contended that the notice of acceptance of the completed building, which was filed January 18, 1924, with the clerk of court, ex officio recorder both of mortgages and conveyances, but recorded in the conveyance records on March 19th, was sufficient under the law; and the claims paid by plaintiff having been filed in the mortgage office March 7, March 8, and March 20, 1924, long after the expiration of the 45 days allowed by the statute, the liens were lost and the school board was bound to pay over the balance to the contractor or other persons on his order.

As pointed out in the opinion on the plea to the jurisdiction and motion to dismiss, the contract and bond together constituted a three-sided agreement between the school board, the contractor, and the surety, carrying mutual rights and obligations which, by the very nature of the undertaking, all were bound to respect and perform. The contractor was required to complete and deliver the building to the

school board, free of claims and liens, according to the contract, and the surety was bound to see that these obligations were carried out. On the other hand, the school board or owner was obligated to pay the price only in the manner and for the purpose stipulated in the contract. By accepting the guaranty of the surety for the performance of the work, the board agreed that the former should have the protection which that method and manner of payment would afford. As a result of the relation thus created, the surety acquired an interest in the funds in the hands of the board entitling it to claim the same for its reimbursement in event it was called upon to pay laborers and materialmen, which was superior to that of any third person holding an assignment for money loaned to the contractor outside the contract. Prairie State Nat. Bank v. U. S., 164 U. S. 231, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547. So long as this fund was unpaid to the contractor, this interest continued, and it is my view that when the school board was advised that the claims, which plaintiff subsequently had to satisfy, were outstanding and unpaid, it was put on notice that it could not thereafter divert these funds to any other purpose, without rendering itself liable, either to the claimants or the surety, not because of the statutory lien created by the state law, but because of the express and implied obligations of the contract and bond. I think the claimant and surety each had, from the very nature of the contract, an independent right and claim against the fund upon the occurring of the conditions which brought them into force, all of which related back to the making of the contract and executing of the bond. The board could not accept an order such as was given, at the time of its giving, by the contractor, to their prejudice in so far as the 15 per cent. reserve which it was required to hold was concerned, and when it diverted the same to another purpose, it became liable to plaintiff for reimbursement for the sums which the latter had to pay as for a conversion of funds which did not belong to it. This 15 per cent. was intended as much for the protection of the claimants and surety on the bond as it was for the owner of the building, and their rights therein were superior to those of the contractor. In other words, the board's willful disregard of the claims after actual notice thereof before payment amounted to a tort or quasi offense and breach of contract within the

meaning of the code, giving rise to an action in damages, the measure of which was the sum of which the claimants, in the first instance, and the surety ultimately, were deprived by the illegal action of the board. Ordinarily, the surety would have been discharged by the action of the board. Rev. Civ. Code, art. 3061. But on account of the peculiar nature of its contract in this case, it was bound to pay the furnishers of material and labor, regardless of the timely filing of their claims, or the doings of the board. The bond constituted an obligation in their favor pour autrui. Rev. Civ. Code, art. 1890; section 1, Act No. 224 of 1918. Plaintiff had the right under its contract of suretyship, upon payment of any of the claims, to be subrogated, not only to the rights of the contractor, but also to all of those of the creditor board against the fund. The latter also had a contingent liability to the claimants, dependent upon the sufficiency of the bond if the claims were timely recorded and it was forced to provoke the concursus proceeding provided by the act, and even though it may have been discharged by a failure to record them within the 45-day period (although this is not clear in view of section 2 of the act), it did not have the right, after the actual notice which it received in this instance, to pay the money out to third persons without the knowledge or consent of the surety and thereby defeat and destroy the plaintiff's rights of subrogation, upon payment, to the contractual preference of both the owner and contractor. New England Mutual Life Ins. Co. v. Randall et al., 42 La. Ann. 260, 7 So. 679.

Under the views above expressed, it is unnecessary to determine what the effect would have been had the school board paid the balance of the contract price after the expiration of the 45 days without notice of the existence of these claims. Neither do I think it necessary to consider the question raised as to the recording of the notice of acceptance of the building in the conveyance instead of the mortgage records. My opinion is that, as a matter of law, since the balance in the board's hands after the completion of the work was more than sufficient to pay these claims and it deliberately paid the same to the bank after knowledge of their existence, it therefore became liable to the plaintiff as the ultimate beneficiary of the fund, and the latter should have judgment for the amount which it paid out under the obligations of its bond.

I do not believe that the case warrants the giving of judgment against the officers of the board; neither am I called upon to say what its rights may be against them for their improper use of funds.

Decree may be presented.