DREW, J.
hThe Caddo Parish School Board (CPSB) appealed the judgment in favor of Roofing Supply, Inc. of Shreveport, which supplied material to a subcontractor on a CPSB building project. CPSB asserted that the trial court erred in applying the Louisiana Public Works Act (LPWA), La. R.S. 38:2241, et seq., since Roofing’s lien was filed beyond the statutory 45-day period. CPSB also assigned as errors the trial court’s ruling that Roofing proved the materials for which payment was sought were used in the CPSB project and concluding that Roofing was a qualified claimant under the LPWA. Roofing answered the school board’s appeal, asserting that the trial court erred in failing to award all the funds sought and refusing to award attorney’s fees. The judgment of the trial court is amended, and as amended, is affirmed.
FACTUAL AND PROCEDURAL BACKGROUND
In 1998, the CPSB entered a standard form AIA contract for $1,070,000.00 (later increased to $1,087,572.00) with the general contractor, Design Build Development Services, Inc., for the construction of the “Pine Grove” Classroom Wing Addition in Shreveport. The general contractor and the CPSB used several different permutations of the name, all of which referred to the general contractor.
*464 As work proceeded, CPSB made ten payments to the general contractor and issued its last check on August 6, 1999, but held back a retainage amount and other amounts. The school board occupied the building for the 1999-2000 school year. The architect, the school board, and Design Build Construction Services executed a Certificate of | ^Substantial Completion recorded November 17, 1999, in Caddo Parish under # 1680005 with a $14,000.00 punch list attached.
A dispute between the school board and the general contractor arose because the building was 500 to 520 square feet smaller than shown on the plans. The general contractor did not agree to a reduced contract price requested by the school board. The building had numerous problems including foundation and wall defects which resulted in the building’s demolition. Due to liens on record and construction defects, the school board never released the money held back.
Litigation spawned by this construction debacle involved, among others:
• Design Build Development Services, Inc., general contractor. (The trial court noted there was confusion among the parties as to the correct name of the general contractor. CPSB documents included the names “Design Build Development Services, Inc.,” DBSC Corporation, and DBCS Corporation. Finding the CPSB responsible for the confusion, the trial court treated varied names as referring to the general contractor.)
• Patterson Insurance Company, bonding company for the project.
• Roofing Supply, Inc. of Shreveport, plaintiff, which supplied roofing material to the Bullard Company.
• Bullard Company, roofing subcontractor, which obtained supplies from Roofing.
• WP America, Inc. d/b/a Binswanger Glass Company, which supplied material for the project.
The following suits resulted:
1. An action by the CPSB filed September 28, 2001, against the general contractor and other parties was resolved and dismissed prior to trial which was limited to the claims by the two suppliers below.
[s2. In its action to enforce a material-man’s lien and for judgment on open account, WP America, Inc. d/b/a Binswanger Glass Company (Bin-swanger) sued the CPSB, the bonding company, and the general contractor. CPSB filed a document in this court showing the portion of the judgment favoring Binswanger has been satisfied.
3. On November 17, 2000, Roofing sued the general contractor, Patterson Insurance (general contractor’s bonding company), and the school board, seeking to recover the $23,802.10 plus interest and attorney’s fees owed Roofing by the Bul-lard Company, with which Roofing had an open account relationship.
The record shows that Patterson was placed into receivership in 2003 and the Bullard Company went bankrupt. The general contractor was not active in this appeal, which is limited to the dispute between Roofing and the school board.
Co-owner with her husband, corporate officer, and bookkeeper of Roofing Supply, Debbie Sayers testified that Roofing was a wholesale distributor of roofing and vinyl siding products. In 1999, Bullard Company contacted Roofing about supplying roofing material for the CPSB project on which Bullard was the roofing subcontractor. Over a period of years, Bullard Company maintained an open line of credit on a single account with Roofing for all of the *465 supplies it purchased for a variety of construction jobs. Either through a Roofing salesman or through a phone call from Bullard Company to Roofing, Bullard placed orders for material for this school addition. Delivery was made by direct shipments via common carrier from the manufacturer, delivery via Roofing trucks or by Bullard employees picking up a particular order. Orders totaling $23,802.10 on the Pine Grove addition were not paid.
| ¿Sayers stated that Chuck Ashley, Roofing’s collections coordinator, prepared and filed a lien on July 20,1999. Although this lien contains a property description, it has no references to the CPSB or the Pine Grove addition project. Sayers stated it was company policy that notice of a lien be sent to the school board and the general contractor; Sayers had nothing in her file documenting that a copy of the hen was sent.
Ashley testified he did not specifically recall filing the July 20, 1999, lien, but that his practice was to determine who owned the property and send the landowner a copy of the lien. Normally, transmittal letters would have been sent also, although none were in Roofing’s file. Ashley recalled signing the affidavit on November 3, 2000, in which he stated he followed Roofing policy by sending a letter notifying the CPSB about Roofing’s filing the lien due to Bullard’s failure to pay for the supplies.
Sayers stated that on August 29, 2000, Roofing sent a letter to the general contractor requesting that the bonding company pay the unpaid invoices owed to Roofing by Bullard. Also filed into evidence was a September 26, 2000, letter from Roofing to the bonding company concerning nonpayment for the roofing materials Roofing supplied to Bullard.
On October 6, 2000, Roofing filed into the public records of Caddo Parish an amended lien naming the CPSB as owner, identifying the Pine Grove addition project, and naming the general contractor. This amendment referred to the initial lien filed July 20, 1999. Roofing also sent the CPSB a | Jetter dated October 6, 2000, informing the school board of the July 20, 1999, lien filed on the project for the outstanding debt of $23,802.10.
After the litigation commenced, Sayers testified that Roofing learned that the bonding company was in receivership. On September 30, 2003, Roofing filed a proof of claim with the Louisiana Insurance Commissioner’s office, which did not pay the claim.
On cross-examination, Sayers acknowledged that Roofing had no written agreement with Bullard to provide materials for the disputed project. When materials were delivered to the Pine Grove job site, Sayers considered the product used by Bullard for that particular job. Sayers testified that Jerry Bullard, owner of Bul-lard Company, personally guaranteed payment of Bullard’s bill to Roofing in a document signed on September 24, 1999. Sayers identified a May 1, 2000, invoice to Bullard Company totaling over $37,000.00 with a number of projects noted thereon including the Pine Grove job. The invoice reflected that Jerry Bullard had made the following payments:
07/16/99 $2,619.46
10/26/99 $1,265.99
11/23/99 $1,405.47
12/29/99 $2,000.00
Sayers declared that the payments would have been credited against whichever particular charges Bullard requested to receive the credit. Otherwise, the payments were credited against the oldest charges on the invoice. None were credited against the $23,802.10 Roofing sought from the CPSB. In addition to Bullard Company going bankrupt, Sayers stated *466 that Jerry Bullard personally filed bankruptcy.
| ^Concerning the invoices on which Roofing based its $23,802.10 claim, Sayers testified internal pick tickets were generated before delivery and invoicing. The witness gave the following information about the unpaid invoices:
1. Inv. # 095987 04/08/99 $5,852.19
According to Sayers, because her husband’s handwriting appeared on the pick ticket, this order was delivered from the Roofing warehouse and she believed “CC” were initials for a Roofing driver making the delivery.
2. Inv. # 096079 04/09/99 $3,500.86
This was a delivery direct from the manufacturer to the Pine Grove Addition site. There was no pick ticket, and Sayers speculated it had been misfiled.
3. Inv. # 096168 04/10/99 $374.44
This was picked up by a Bullard employee who signed “R (illegible)” on the pick ticket for the Pine Grove Addition project.
4. Inv. # 097035 04/28/99 $5,251.28
This was a shipment direct from the manufacturer to the address of the Pine Grove Addition job. The pick ticket was missing and probably misfiled.
5. Inv. # 097464 05/06/99 $4,392.95
The initials “FP” indicated a Roofing driver, Floyd Pickett, delivered the order from the Roofing warehouse to the job.
6. Inv. # 098292 05/24/99 $54.56
The order was picked up by Mr. Jefferson of Bullard, who signed the pick ticket.
7. Inv. # 098404 05/26/99 $986.37
The order was picked up by Mr. Jefferson of Bullard, who signed the pick ticket.
8. Inv. # 098415 05/26/99 $1,138.98
This was picked up at the Roofing warehouse and signed for by a Bul-lard employee whose name was not legible, but who also signed pick tickets for Inv. # 096168 and # 098418.
9. Inv. # 098418 05/26/99 $814.04
17This was picked up at the Roofing warehouse and signed for by a Bul-lard employee whose name was not legible, but who also signed pick tickets for Inv. # 096168 and # 096415.
10. Inv. # 098422 05/26/99 $814.04
The order was picked up by Mr. Jefferson of Bullard, who signed the pick ticket.
11. Inv. # 098476 05/27/99 $622.39
Roofing delivered this order to the Pine Grove job site, where John Davis signed for it.
DISCUSSION
In State Through Div. of Admin. v. McInnis Bros. Const., 97-0742 (La.10/21/97), 701 So.2d 937, Justice Kim-ball explained the longstanding and well-settled principle that lien statutes are strieti juris and must be strictly construed. Public contract laws are to be strictly construed and the privileges granted must not be extended beyond the statutes. The LPWA is sui generis and provides exclusive remedies to parties in public construction work.
Because liens are not enforceable against publicly-owned property, workers and suppliers engaged by public agencies cannot protect themselves with liens against public property. In contrast, workers and suppliers involved in private building projects can protect their rights *467 by filing liens against the privately-owned property itself.
Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current public works statutes, La. R.S. 38:2241 et seq., granting rights to laborers and materialmen involved in public works. The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, “a privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into.”....
8State Through Div. of Admin. v. McInnis Bros. Const., supra, at p. 943.
The LPWA, La. R.S. 38:2241, provides, in pertinent part, that when a public entity enters into a contract over “five thousand dollars for the construction, alteration, or repair of any public works, the official representative of the public entity shall reduce the contract to writing and have it signed by the parties.” A claimant under the LPWA is “any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works ...[.]” La. R.S. 38:2242(A).
La. R.S. 38:2242(B) and (D) state:
B. Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
D. When an awarding authority makes final payment to the contractor without deducting the total amount of all outstanding claims so served on it or without obtaining a bond from the contractor to cover the total amount of all outstanding claims, the awarding authority shall become liable for the amount of these claims.

Appeal by the CPSB

The CPSB asserted that Roofing did not qualify as a claimant under the LPWA because Roofing did not prove it had a contract with Bullard. La. C.C. art. 1927 states that a contract is formed by the consent of the parties established through offer and acceptance which may be made orally, in writing, or by action or inaction that under the circumstances is clearly | flindicative of consent. Citing La. C.C. art. 1846, CPSB correctly stated that the contract in excess of $500.00 must be proved by at least one witness and other corroborating circumstances.
The record shows that Bullard and Roofing had a longstanding business relationship over a period of years conducted through Bullard’s orders and Roofing’s deliveries being tracked on a single open account on which Bullard made payments. In addition to Sayers’ testimony, the record contains other corroboration; ie., the documents showing the different modes of delivery including pickup by Bullard employees who signed for various orders and designated the project for which the material was to be used. The trial court did not err in finding a contractual relationship between Roofing and Bullard as required by La. R.S. 38:2242(A).
 Next, the CPSB contended that Roofing failed to prove that its material was used in the Pine Grove addition. Once a supplier proves delivery to the job site, the burden shifts to the defendant to *468 show the material was not used in the construction of the project. The material-man need only show by sufficient, competent proof that materials were delivered to the job site. Best Electric Supply Company, Inc. v. Rittiner, 334 So.2d 792 (La.App. 4th Cir.1976). The CPSB seeks to distinguish the Best Electric case factually, since there was testimony from the subcontractor in addition to the materialman’s extensive testimony about their internal procedures and invoicing system.
While no one from Bullard testified in this case, the trial court did not err in concluding there was sufficient proof that the Roofing purchases were Undelivered to the Pine Grove addition job site. Roofing Supply established that five invoices totaling $19,619.69 were delivered by Roofing Supply to the job site. The trial court also found that through testimony Roofing Supply proved that five additional invoices totaling $4,182.43 and marked with the project name were applicable.
As noted previously, Sayers testified exhaustively about the open account arrangement between Roofing and the Bullard Company. Moreover, she explained how the invoices and available pick tickets documented the orders and deliveries to the Pine Grove addition project location. Jerry Bullard personally guaranteed the Bul-lard Company’s debt to Roofing; and the record contains no indication that any of the Roofing charges were disputed. Moreover, Sayers explained how Bullard employees attributed orders to this project and signed for many of the deliveries.
In Parish Concrete, Inc. v. Fritz Culver, Inc., 399 So.2d 694 (La.App. 1st Cir.1981), sufficient proof of delivery to a job site was based upon the testimony of the supplier’s general manager who, like Sayers, described the bookkeeping, invoicing, and delivery systems. One of the supplier’s truck drivers also testified about making some of the many deliveries to the particular job in dispute. The court in Parish, supra, specifically noted that the defendant offered no evidence that the materials were not delivered by the supplier to the job site.
Sayers detailed Roofing’s method of doing business with Bullard Company, a longtime customer. The material was transported to the job site by Roofing or the manufacturer or picked up by Bullard employees. There Inis no evidence that the deliveries were not properly made. Even without testimony of a Roofing driver, the documents filed into evidence and the testimony explaining the operation were sufficient to support the trial court’s finding that Roofing established delivery of its material to the CPSB construction project at issue.
The CPSB also urged that Roofing was not entitled to recover because its lien was not filed within the prescribed 45-day period after the Certificate of Substantial Completion was filed in the public records on November 17, 1999. In its reasons for judgment, the trial court quoted two allegations from the CPSB petition that admitted the school board was still holding $99,330.22 due under the contract and that liens against the property totaling $92,395.50 and suits were pending:
13. All payments due under the contract from the School Board have been made to the Contractor, save and except for $99,330.22 in retain-age and other funds maintained and held by the School Board to ensure proper completion of the project.
48. Liens have been filed against the subject property by subcontractors and materialmen, which total $92,330.50, and suits have been filed against the School Board for *469 the enforcement of the liens, and the School Board is entitled to damages against the Contractor and Surety Company for the amount needed to pay and cancel said liens, and for the defense or settlement and dismissal of the litigation.
As noted previously, the CPSB’s suit was settled and dismissed prior to trial of the consolidated actions. The trial court stated that the CPSB witness, Steve White, testified that the CPSB received over a million in settlement and never released the retainage and other funds due to the defects and problems with the project.
|1?The CPSB urged that the trial court erroneously relied upon cases decided before the modern amendments to the LPWA for the ruling that claims filed before or beyond the 45-day period following the recordation of the notice of substantial completion were timely. However, both Act 224 of 1918 and Act 271 of 1926 of the Louisiana Legislature contained a 45-day filing requirement.
The trial court found that the lien filed July 20, 1999, was insufficient to provide any notice to the school board, since it only referred to the Bullard Company and did not mention the project, the school board, or the general contractor. Roofing Supply also failed to prove that the first lien was mailed to the school board. The trial court found that the evidence established that the school board received notice of the amended October 2000 lien and that the contractor and surety received notice of the July 1999 lien in August and September 1999, respectively. The trial court correctly decided the CPSB had retainage funds and notice of the claims at the time Roofing filed its lien; therefore, the CPSB was liable to Roofing for the cost of the materials sold to Bullard Company for the project.
The trial court explained:
In Levingston Supply Co. v. American Employers’ [Ins.] Company, 216 So.2d 158 (La.App. 1st Cir.1968), one of the defenses was that the plaintiffs lien was filed “prematurely” because it was filed prior to the acceptance of the work. This argument was rejected and the court reasoned that the statutes do not require an acceptance as a condition precedent to a demand for payment or a lien. Thus, a lien can be filed before the 45-day period is activated. Both the Louisiana Supreme Court and the federal Court have recognized that liens filed after the 45-day period are considered and timely enforceable if they were filed before the funds and obligations of the public entity were entirely paid out and the public entity had |13knowledge of the claims. See Claiborne Parish School Board v. Fidelity and Deposit Company of Maryland, 40 F.2d 577 (USCA 5th Cir.1930) (affirming 35 F.2d 376); Uvalde Rock Asphalt Co. v. City of Shreveport, 172 La. 987, 136 So. 26 (La.Sup.Ct.1931). Thus, the School Board arguments that the liens have to be filed within the narrow 45-day period commencing from the date of the re-cordation of the certificate of substantial completion are not well founded in the jurisprudence.
The Court understands that the different notice provisions under the LPWA are designed to work in tandem so that the general contractor, surety and owner are all aware of what is going on and each can take steps to preserve their rights against each other. However, the legislation and the jurisprudence clearly recognize that he owner has liability to subcontractors and materialmen when the owner has knowledge of liens *470 and claims and has contract funds in its possession. The record in this case clearly reflects that the School Board had actual knowledge of the liens and was still holding on to $99,330.22 as of September 28, 1991. [Sic: Date should be September 28, 2001, when the CPSB filed its petition containing the admissions about retainage and liens relied upon by the trial court.]

Roofing’s Answer to the Appeal

In answering the appeal, Roofing complained that the trial court erred in crediting the CPSB with the $7,190.92 payments made by Jerry Bullard personally on the Bullard Company account. Since Roofing Supply had only one account with Bullard, the trial court decided that payments from Bullard of $7,190.92 made from July until December 1999 should be deducted from the total amount Roofing Supply claimed against Bullard and sought to recover from the CPSB.
Roofing is correct that the payments were properly credited against the oldest debts due. A debtor owing several debts to a creditor has the right to impute his payments to the debts he intends to pay. La. C.C. art. 1864. Sayers stated that had Bullard attributed any payments to the Pine luGrove addition bills, that credit would have been given and those debts would not have been included in the invoices for which Roofing sought payment from the CPSB.
La. C.C. art. 1868 directs that, when the debtor does not impute a payment to a particular debt, then payment is first credited against interest bearing debts, then secured debts, and then the debts most burdensome to the debtor. If all debts are of the same nature and became due at the same time, payment must be proportionally imputed to all. If the debtor has the same interest in paying all debts, payment must be imputed to the debt that became due first.
The Roofing statement which the CPSB placed into the record does not indicate any interest charged on the various invoice amounts or show any of the debts are secured. Roofing properly charged Jerry Bullard’s four payments against the oldest debt on the open account statement. Therefore, Roofing is entitled to recover $23,802.10 from the CPSB.
Roofing also requested an award for attorney’s fees. La. R.S. 38:2246(A) states:
A. After amicable demand for payment has been made on the principal and surety and thirty days have elapsed without payment being made, any claimant recovering the full amount of his timely and properly recorded or sworn claim, whether by concursus proceeding or separate suit, shall be allowed ten percent attorney’s fees which shall be taxed in the judgment on the amount recovered.
While Roofing did place into evidence correspondence to both the general contractor and the surety informing them of the lien, neither letter was sufficient to constitute amicable demand for payment. CPSB correctly |1fipoints out in its reply brief that because Roofing did not comply with the provisions of 38:2246(A), Roofing is not entitled to 10% attorney’s fees.
CONCLUSION
Roofing is entitled to recover $23,802.10 for the material furnished to Bullard Company for the CPSB’s Pine Grove addition building project. Therefore, the judgment is amended to increase the award of $16,711.18 by $7,190.92, the payment amount improperly credited to the amount owed by Bullard to Roofing. Due to lack of sufficient amicable demand against the *471 general contractor and its surety, Roofing is not entitled to recover 10% in attorney’s fees under La. R.S. 38:2246(A).
DECREE
The judgment of the trial court is amended to increase the award from the Caddo Parish School Board to Roofing Supply, Inc. of Shreveport by $7,190.92, for a total award of $23,802.10. In all other respects, the judgment is affirmed. Costs of $383.50 are assessed against the Caddo Parish School Board.
AMENDED, AND AS AMENDED, AFFIRMED.