973 So.2d 827 (2007)
ELECTRIC SUPPLY COMPANY, INC., Plaintiff-Appellant
v.
GREAT AMERICAN INSURANCE COMPANY, INC., et al., Defendant-Appellee.
No. 42,727-CA.
Court of Appeal of Louisiana, Second Circuit.
December 12, 2007.
*828 Downer, Hammond & Wilhite, L.L.C., by Kevin W. Hammond, Shreveport, for Appellant, Electric Supply Company, Inc.
Hayter & Odom, L.L.C., by Mark Watkins Odom, Shreveport, for Appellees, Great American Insurance Company and Don M. Barron Contractor, Inc.
Before GASKINS, PEATROSS and DREW, JJ.
DREW, J.
Don Barron Contractor, Inc., entered into a recorded public works contract with the Webster Parish School Board ("Board") for the construction of a school in Sibley, Louisiana. Great American Insurance Company acted as the surety on the contract. Barron subcontracted with EDCO, Inc., to perform electrical work on the construction project.
Between March and December of 2000, Electric Supply Company supplied electrical materials and goods to EDCO in the performance of its subcontract. The total charge to EDCO on its open account was $79,432.00.
On January 23, 2001, Electric Supply recorded a "Claimant's Statement of Amount Due From Contractor Pursuant to the Public Works Act" in the mortgage records of Webster Parish. Electric Supply asserted that it was owed $73,085.45. The next day, it mailed a copy of this Statement of Claim to the School Board, Barron, and EDCO; it was received by all three on January 25.
When the claim was not paid, Electric Supply filed suit against Great American, Barron, and EDCO. Great American and Barron motioned to cancel Electric Supply's lien on the ground that Electric Supply did not comply with La. R.S. 38:2242(F) when it failed to send notice of nonpayment to Barron and the School Board prior to filing the lien. The trial court granted the motion and ordered that Electric Supply's lien be extinguished and removed from the Webster Parish mortgage records. Electric Supply was ordered to pay costs and attorney fees.

DISCUSSION
The only issue on this appeal is whether La. R.S. 38:2242(F) requires that notice of nonpayment be given to the general contractor and owner before a materialman files his lien or privilege. It is helpful to begin our examination of this issue by considering the development of the Public Works Act. Unlike their counterparts on private building projects, workers and suppliers engaged by public agencies cannot protect themselves with liens against public property because liens are not enforceable against publicly-owned property. State Through Div. of Admin. v. McInnis Bros. Const., 97-0742 (La.10/21/97), 701 So.2d 937; VVP America, Inc. v. Design Build Development Services, Inc., 41,652 (La.App. 2d Cir.1/31/07), *829 951 So.2d 461. As noted by the supreme court in Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70 (La.1990):
Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current public works statutes, La. R.S. 38:2241 et seq., granting rights to laborers and materialmen involved in public works. The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, a "privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into."
Citations omitted.
In support of their argument that Electrical Supply was required to give notice of nonpayment before filing its claim, Barron and Great American cite La. R.S. 38:2242, which states in relevant part and with our emphasis added:
B. Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
* * *
F. In addition to the other provisions of this Section, if the materialman has not been paid by the subcontractor and has not sent notice of nonpayment to the general contractor and the owner, then the materialman shall lose his right to file a privilege or lien on the immovable property. The return receipt indicating that certified mail was properly addressed to the last known address of the general contractor and the owner and deposited in the U.S. mail on or before seventy-five days from the last day of the month in which the material was delivered, regardless of whether the certified mail was actually delivered, refused, or unclaimed satisfies the notice provision hereof or no later than the statutory lien period, whichever comes first. The provisions of this Subsection shall apply only to disputes arising out of recorded contracts.
In examining La. R.S. 38:2242, we are mindful of the admonition that in general, lien statutes are stricti juris and should thus be strictly construed. Guichard Drilling Co. v. Alpine Energy Services, Inc., 94-1275 (La.7/3/95), 657 So.2d 1307. "[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes:" Wilkin, 561 So.2d at 71. See also McInnis Bros. Const., supra.
The first sentence of Subsection (F) is clear: "In addition to the other provisions of this Section, if the materialman has not . . . sent notice of nonpayment [by the subcontractor] to the general contractor and the owner, then the materialman shall lose his right to file a privilege or lien on the immovable property." Subsection (F) requires that the materialman must send notice of nonpayment to preserve his right to file a privilege or lien. The reason for this requirement is obvious. A contractor or owner is not always going to be aware of the materialman from whom a subcontractor has obtained materials that the subcontractor has used on a public works project, so forcing the claimant materialman first to give notice to the general contractor and owner places those parties in the position of being able to withhold payment to the subcontractor so as to *830 avoid ultimately having to make a double payment.
Subsection (F), which was added in 1999, places a notice requirement upon materialmen that is in addition to the requirements applicable to all claimants that are found in Subsection (B); hence, Subsection (F) begins with, "In addition to the other provisions of this Section. . . ."
Electric Supply counters that the second sentence in Subsection (F) sets forth the period in which notice can be given. However, the second sentence in Subsection (F) apparently only explains how the notice provision can be satisfied, and the latest date on which the notice can be given assuming a lien or privilege has not yet been filed. In fact, according to this second sentence, the notice period could expire before the end of the 45-day period to make a claim that is set out in Subsection (B): "deposited in the U.S. mail on or before seventy-five days from the last day of the month in which the material was delivered satisfies the notice provision hereof or no later than the statutory lien period, whichever comes first."
An additional notice provision for claimants who have contractual privity with a subcontractor, but not with a contractor, is set forth in La. R.S. 38:2247, which states, with our emphasis:
Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.
We note that the above-referenced notice is not the same as the notice required of materialmen found in Subsection (F) of La. R.S. 38:2242. The notice of nonpayment in Subsection (F) is to be given to the owner and contractor to preserve the right to file a claim, while the notice referenced in La. R.S. 38:2247 is to be given to the contractor to preserve the right of action against the contractor or the surety. In addition, the notice required in Subsection (F) would be untimely if it was given before a claim was filed but after 75 days had elapsed since the last day of the month in which material was delivered, even if the 45-day statutory lien period had not elapsed. The notice requirement found in. La. R.S. 38:2247 references only the 45-day statutory lien period provided in La. R.S. 38:2242(B).

CONCLUSION
We hold that La. R.S. 38:2242(F) requires that notice of nonpayment be given to the general contractor and owner before *831 a materialman files his lien or privilege. Accordingly, we find no error in the trial court's judgment granting the motion to cancel the lien. At appellant's costs, the judgment is AFFIRMED.