OPINION OF THE COURT
Chief Judge Kaye.
Specialty Products & Insulation Company, a supplier to a subcontractor on a public improvement project, made several unreimbursed deliveries of materials under an open account arrangement with the subcontractor. In this appeal, we are asked to determine whether the supplier provided timely notice of its claim for payment for those deliveries under State Finance Law § 137 (3), so as to be entitled to payment under the labor and materials payment bond posted for the project. The issue boils down to whether, in an open account arrangement, the statutory 120-day notice period is measured from each delivery to the project or from the final delivery of materials for which the claim is made. We agree with the Appellate Division that the latter interpretation is correct.
I.
At issue is payment for deliveries made to a public improvement project involving additions and alterations to Broome County courts. Northland Associates, Inc., as general contractor, hired Klimchuck & Company, Inc. for a portion of the work. Klimchuck in turn arranged for the supply of materials by Specialty Products on an open account basis. Under the open account arrangement, Klimchuck placed a separate purchase order for each materials request and the supplier submitted a separate invoice for each corresponding delivery.
At Klimchuck’s request, Specialty Products periodically delivered supplies, including eight separately invoiced deliveries made between October 15 and December 17, 1998, totaling $48,578.34.[1] On March 29, 1999, the supplier notified North-land that it had not been paid.
*462 Consistent with State Finance Law § 137, St. Paul Fire & Marine Insurance Company issued a payment bond on behalf of Northland and in favor of Broome County, as obligee, to secure payment for labor and materials provided to the project. After notifying Northland of the amounts owed, Specialty Products delivered a notice of claim to Northland and the Broome County Commissioners, and filed a proof of claim with St. Paul. The supplier then filed suit against St. Paul under the payment bond for the outstanding amounts. Northland later paid the supplier $12,780.43, the amount owed for materials furnished within 120 days preceding the March 29, 1999 notice, but refused to pay the balance. The parties cross-moved for summary judgment, contesting whether the supplier had provided timely notice under the State Finance Law for the remaining $35,797.91 relating to earlier deliveries.
Supreme Court granted St. Paul summary judgment and dismissed the complaint. The court interpreted the 120-day notice requirement of State Finance Law § 137 (3) to apply separately to each delivery, ruling that each invoice constituted a separate contract between the subcontractor and the supplier. The Appellate Division reversed and granted Specialty Products partial summary judgment, dismissing St. Paul’s affirmative defense related to timeliness of the notice. The Court rejected the trial court’s contract-based analysis, looking instead to decisions construing a similar provision in the Federal Miller Act (40 USC § 270a et seq.) and requiring notice of a claim within 120 days after final delivery. On remittal, Supreme Court granted Specialty Products summary judgment and entered a judgment in the amount of $35,797.91. This Court granted leave to appeal, and we now affirm.
II.
Section 137 of the State Finance Law protects the rights of persons furnishing labor or materials to contractors or subcontractors on a public improvement project to receive payment by requiring the posting of a payment bond. The statute provides laborers and material suppliers with a right to sue directly on the bond for amounts not paid by the contractor or subcontractor, as follows:
“Every person who has furnished labor or material, to the contractor or to a subcontractor of the *463 contractor, in the prosecution of the work provided for in the contract [for a State public improvement] and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action * * (State Finance Law § 137 [3].)
Laborers and material suppliers who work for a subcontractor — rather than directly for the general contractor — are also permitted to assert claims under the payment bond but first must give the general contractor notice of their claim. Section 137 (3) requires that
“a person having a direct contractual relationship with a subcontractor of the contractor furnishing the payment bond but no contractual relationship express or implied with such contractor shall not have a right of action upon the bond unless he shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed or the last of the material was furnished, for which his claim is made * * * ” (emphasis added).
The statute strongly resembles its model, the Federal Miller Act (40 USC § 270a et seq.), both with the same remedial purpose. In particular, since 1935 the Miller Act has contained a parallel notice provision but requires that notice be given within 90 rather than 120 days after the date the last of the material was supplied or labor furnished (compare State Finance Law § 137 [3] with 40 USC § 270b [a]).
The similarity between the two laws did not always exist. As originally enacted in 1938, the State Finance Law contained more rigorous preconditions for a laborer or material supplier seeking to recover under a payment bond. The statute required suppliers first to file and enforce mechanics’ liens under the Lien Law, and laborers to file and enforce either mechanics’ liens or claims for unpaid wages under the Labor Law (see L 1938, ch 707).
In 1964, at the recommendation of the Law Revision Commission, the State Finance Law was amended to more closely *464 follow the federal statute. In particular, the presuit conditions were amended to permit a laborer or material supplier to sue on the performance bond for unpaid amounts — without first exhausting Lien Law and Labor Law remedies — starting 90 days after the last of the labor was performed or material furnished. A person who had no direct contractual relationship with the contractor was required to provide written notice of a claim within 90 days from the date on which the last of the labor was performed, or the last of the material was furnished, for which the claim is made (L 1964, ch 700).[2]
The Law Revision Commission encouraged the adoption of the modern section 137 (3) procedures because, in its view, the prior statutory scheme provided only limited assurance of prompt payment to laborers and suppliers. The Commission observed that in New York a payment bond claim served as a “remedy of last resort” after other sources of recovery were exhausted or shown to be futile, and the Lien Law limitations period indirectly barred claims later asserted against a payment bond (see 1963 Report of NY Law Rev Commn, at 101).[3]
The 1964 bill received wide support. The Department of Audit and Control noted that the amendments would lessen the hardships for laborers and material suppliers caused by the delays often occurring under the old procedures (Letter from State Dept of Audit and Control, Apr. 20, 1964, Bill Jacket, L 1964, ch 700). The Department of Public Works also supported the bill on the ground that the simplified procedures would benefit laborers and material suppliers working on State construction projects (Letter from State Dept of Pub Works, Mar. 18, 1964, Bill Jacket, L 1964, ch 700). The Association of Casualty and Surety Companies, writing in support of the bill, described the prior procedures as “substantially unique to New *465 York” and “unusual and cumbersome” for beneficiaries of payment bonds (Letter from Association of Casualty and Surety Companies, Apr. 20, 1964, Bill Jacket, L 1964, ch 700). A 1980 amendment extended the notification period from 90 to 120 days (L 1980, ch 360).
III.
Against this statutory background we turn to the issue at hand: Is the statutory notice period in an open account arrangement triggered by each separate invoice or by final delivery? We note that cogent arguments can be mustered for— and against — both interpretations of the statute, as reflected in the division between the courts below as well as among state and federal courts throughout the nation. What is most important is that there be clarity and certainty as to what the statute requires. In our view, the better interpretation is that the statutory notice period is triggered by the final delivery for which the claim is made.
That interpretation seems a better fit with the words of the statute, which provides that notice must be given within 120 days from the “date on which the last of the labor was performed or the last of the material was furnished, for which [a laborer or material supplier’s] claim is made.”[4] That is especially so when the words of the statute are considered alongside the legislative objective: to remove unnecessary obstacles and promote prompt payment to laborers and material suppliers. While St. Paul argues for a contract-based construction because the notice provision was also intended to assist contractors in investigating claims and withholding funds to pay those claims, it is clear that the Legislature adopted the current procedures to loosen the preconditions to suit under payment bonds.[5] The surety’s reading would unduly burden suppliers using open ac *466 counts, requiring them to give separate notice even for a large volume of invoices, sometimes — as in the present case — for as little as $43.55 and $23.17.
While St. Paul argues that our rule will result in the revival of otherwise stale claims each time a new order is placed, we expect that few suppliers — whatever their contractual arrangement — will continue to provide materials for extended periods of time without payment. Moreover, prudent suppliers will take measures to keep their claims from lapsing by periodically notifying contractors about outstanding invoices when it is uncertain whether future orders will be placed.
We note that this is also the conclusion reached by most federal courts considering this same issue under the Miller Act.[6] Their conclusion, like ours, is that fixing a final liability date for general contractors was secondary to the protection of laborers and material suppliers (see e.g. Noland, 273 F2d at 920-921).
Finally, St. Paul argues that Haun Welding Supply v National Union Fire Ins. Co. of Pittsburgh, Pa. (222 AD2d 1099 [4th Dept 1995]) and New York Plumbers’ Specialties Co. v Barney Corp. (52 AD2d 832 [1st Dept 1976]) appear to reach a contrary result. Because those cases involve private bond terms, not statutory notice requirements, we have no occasion to consider the continued viability of those holdings.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.
*467 Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.

. The eight deliveries relate to the following invoices: October 15, 1998— $4,716.06; October 15, 1998 — $7,899.94; October 29, 1998 — $17,731.61; *462 November 30, 1998 — $5,450.30; December 10, 1998 — $12,227.07; December 10, 1998 — $486.64; December 17, 1998 — $43.55; December 17, 1998 — $23.17.

. The Law Revision Commission originally proposed amending the State Finance Law in 1962 (see 1962 Report of NY Law Rev Commn, at 185-187), and recommended a modified bill in 1963 (see 1963 Report of NY Law Rev Commn, at 105-108). The 1964 version of the bill addressed certain concerns raised by the Governor (see 1964 Report of NY Law Rev Commn, at 39).

. As recognized by the Law Revision Commission, moreover, the proposed notice requirements benefit contractors as well as laborers and material suppliers. A contractor who does not have a direct contractual relationship with a laborer or material supplier may not be aware of the existence of unpaid claims. Under the original statutory procedures, a contractor was alerted to such claims upon the filing of a mechanics’ lien or statutory wage claim. The 90-day notice provision serves a similar function, in giving the contractor an opportunity to protect itself by withholding payments to the subcontractor who is primarily liable upon the claim (1963 Report of NY Law Rev Commn, at 104).

. In direct contrast to the section 137 (3) procedures, which are not contract-based, the statute of limitations for commencing an action on a payment bond is tied to a period of “one year from the date on which final payment under the claimant’s subcontract became due” (see State Finance Law § 137 [4] [b] [emphasis added]; see also Windsor Metal Fabrications v General Acc. Ins. Co. of Am., 94 NY2d 124 [1999] [interpreting statute of limitations provision]). The application of that statute of limitations period to claims on open accounts is not before us in this appeal.

. We also note that a contractor’s ability to investigate and reconcile labor and material claims is protected at least in part by other statutes such as article 3-A of the Lien Law, which imposes record-keeping and trustee obligations on contractors and subcontractors that receive money under a public improvement project.

. See United States for Use & Benefit of Water Works Supply Corp. v George Hyman Constr. Co. (131 F3d 28 [1st Cir 1997]); United States for Use of A & M Petroleum, Inc. v Santa Fe Engrs., Inc. (822 F2d 547 [5th Cir 1987]); Noland Co. v Allied Contrs., Inc. (273 F2d 917 [4th Cir 1959]); United States for Use & Benefit of Chemetron Corp. v George A. Fuller Co. (250 F Supp 649 [D Mont 1965]); United States for Use & Benefit of J.A. Edwards & Co. v Bregman Constr. Corp. (172 F Supp 517 [ED NY 1959]). But see United States for Use & Benefit of J.A. Edwards & Co. v Peter Reiss Constr. Co. (273 F2d 880 [2d Cir 1959], cert denied 362 US 951 [I960]); United States for Use & Benefit of Robert DeFilippis Crane Serv., Inc. v William L. Crow Constr. Co. (826 F Supp 647 [ED NY 1993]); United States for Use & Benefit of I. Bu-rack, Inc. v Sovereign Constr. Co. (338 F Supp 657 [SD NY 1972]). See also J.R. Christoni, Inc. v White Oak Corp. (1992 WL 65423, 1992 Conn Super LEXIS 842 [Mar. 17, 1992] [unpublished op]); Coast Elec. Co. v Industrial Indem. Co. (144 Cal App 3d 879, 193 Cal Rptr 74 [1983]) (each applying project-based analysis to similar state statutes); Russell v Travelers Indem. Co. (244 F Supp 419 [WD Mo 1965]).