[841 NYS2d 600]

TRIBORO HARDWARE & SUPPLY CORP., Appellant-Respondent, v
FEDERAL INSURANCE COMPANY et al., Respondents-
Appellants.

Second Department, September 4, 2007

APPEARANCES OF COUNSEL

*Dunnington, Bartholow & Miller LLP* (*Levin & Glasser, P.C.*, New York City [*Steven I. Levin* of counsel]), for appellant-respondent.

*Matthew T. Worner* (*Ledy-Gurren Bass & Siff, LLP*, New York City [*Deborah Bass* and *Nancy Ledy-Gurren* of counsel]), for respondents-appellants.

**OPINION OF THE COURT**

ANGIOLILLO, J.

In *Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.* (99 NY2d 459 [2003]), the Court of Appeals held that on a public improvement project subject to State Finance Law § 137, the time within which a supplier of materials must give notice of a claim for payment under the statutory payment bond, in order to be timely, is measured from the final delivery of materials for which claim is made, rather than from the date of each separate delivery of materials. Similarly, we now hold that the timeliness of the claim of the plaintiff in this case for payment under a private payment bond, on a project which is not a public improvement project and which is therefore not governed by State Finance Law § 137, is also measured by the final delivery of materials for which claim is made.

The plaintiff, Triboro Hardware & Supply Corp. (hereinafter Triboro), contracted to supply construction material to a subcontractor, Carlton Concrete Corp. (hereinafter Carlton), for the construction of an apartment building known as Jefferson Place Residence, which was not a public improvement project. Carlton contracted with the general contractor, HRH Construction, LLC (hereinafter HRH), to provide all the material and labor in connection with the performance of the structural/post tension concrete aspect of the project. To assure payment for all labor, material, and equipment furnished for use in the perfor-

mance of the entire project, HRH, as contractor, obtained a private payment bond from the defendants, as sureties, in the amount of $62,913,000. The owner of the project, as noted on the payment bond, was Jefferson at White Plains, LLC.

Triboro supplied construction hardware and supplies to Carlton between September 2003 and August 2004 for use on the project. When Carlton, which filed for bankruptcy protection, failed to make payment for that material, Triboro provided notice of its claim to the defendant Vigilant Insurance Company by letter dated September 27, 2004, and requested payment under the payment bond. When payment was not made by the defendants within 45 days of notice of the claim, Triboro commenced the instant action.

Triboro moved for summary judgment on the complaint. The defendants cross-moved for summary judgment dismissing so much of the complaint as sought to recover for materials supplied before June 11, 2004, on the ground that Triboro's notice of claim was untimely as to materials supplied before that date. The defendants asserted that Triboro had an "open account" arrangement for the delivery of material for Carlton and therefore, under the defendants' interpretation of the notice provisions of the payment bond, Triboro was required to give notice within 90 days of each separate delivery of materials to the project. The defendants asserted that Triboro's notice was untimely as to any material supplied before June 11, 2004. In opposition to the cross motion, Triboro asserted that its arrangement with Carlton was not an open account; rather, the 78 deliveries of material by Triboro to Carlton were part of Triboro's comprehensive agreement with Carlton to supply all the general construction material for Carlton's portion of the project. The Supreme Court found that there was a question of fact as to whether the relationship between Triboro and Carlton was a single contract, with notice of partial performance evidenced by invoices after each delivery, or whether each invoice represented a separate contract, and denied the motion and cross motion for summary judgment. The Supreme Court indicated its view that, if the parties had an open account relationship, each delivery would require notice within 90 days, citing to *New York Plumbers' Specialties Co. v Barney Corp.* (52 AD2d 832, 833 [1976]).

This appeal and cross appeal present the question of whether the contract-based analysis of the notice of claim provisions of a construction payment bond, utilized by the First Department in

*New York Plumbers'* (*supra*) and by the Fourth Department in *Haun Welding Supply v National Union Fire Ins. Co. of Pittsburgh, Pa.* (222 AD2d 1099 [1995]), should be applied in this case. The Court of Appeals, in *Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.* (*supra*) did not follow a contract-based analysis in its interpretation of the notice of claim language required in payment bonds issued to secure payment on public improvement projects pursuant to State Finance Law § 137. At the conclusion of that decision, the Court of Appeals stated that since *New York Plumbers'* and *Haun Welding Supply* involved private bond terms, it had no occasion to consider the continued viability of those holdings. If the holdings of the First and Fourth Departments are not followed, the question identified by the Supreme Court in this case is not relevant to the determination of the motion and cross motion for summary judgment.

The claimant in *Specialty Prods.* had an open account arrangement to supply material to a subcontractor on a public improvement project. The subcontractor placed a separate purchase order and the supplier submitted a separate invoice for each corresponding delivery. The payment bond contained the statutory notice provisions required by State Finance Law § 137 (3) on a claim by an entity not having a direct contractual relationship with the contractor who furnished the payment bond. The notice provision in the private payment bond issued in this case is substantially the same as that required by State Finance Law § 137, the distinction being that notice was required within 90 days of the triggering event as opposed to the statute's requirement of such notice within 120 days.

The payment bond provided in this case was issued on a standard form developed and copyrighted by the American Institute of Architects, known as form A312. In order for the sureties to have an obligation to a claimant who does not have a direct contract with the contractor, that claimant must "[h]ave furnished written notice to the contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed." It is the phrase "having last performed labor or last furnished materials or equipment included in the claim" that is at issue in this case. The corresponding phrase in

State Finance Law § 137 (3) is "from the date on which the last of the labor was performed or the last of the material was furnished, for which his claim is made."

In *Specialty Prods.*, the Court of Appeals identified two benefits flowing from the enactment of the present notice provisions of State Finance Law § 137. The notice provision significantly simplified the procedures for laborers and material suppliers to obtain prompt payment for their services or goods, eliminating the necessity of their first exhausting remedies under the Labor Law or the Lien Law. The notice provisions also benefit contractors in investigating claims and withholding payments to subcontractors on these claims.

The Court of Appeals, in *Specialty Prods.*, agreed with the rejection by the Appellate Division, Third Department, of the trial court's contract-based analysis of the notice requirements. The Appellate Division, Third Department, and the Court of Appeals looked instead to decisions of the federal courts in their statutory interpretation of the comparable notice provision of the Miller Act (40 USC § 270a *et seq.*).

The Court of Appeals noted that arguments could be presented on both sides of the question of whether the notice requirements are triggered by each separate invoice in an open account arrangement or by the final delivery by the claimant. The Court of Appeals found that the argument advanced by the surety would "unduly burden" suppliers using an open account, as it would require a separate notice no matter the volume of deliveries or the amount owed for each delivery. The Court of Appeals noted that "fixing a final liability date for general contractors was secondary to the protection of laborers and material suppliers" (*Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.*, 99 NY2d 459, 466 [2003]). The Court of Appeals concluded that the statutory notice period of State Finance Law § 137 was to be measured from the final delivery of materials for which the claim is made.

While the payment bond in question in *Specialty Prods.* was a statutory bond under State Finance Law § 137 and the private payment bond in this case is a common-law bond, the provisions in the bond issued by the defendants are substantially the same. The American Institute of Architects form A312 addresses both the common-law and statutory bond provisions. Paragraph 13 of the bond issued by the defendants provides: "[w]hen this bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be

performed, any provision in this bond conflicting with said statutory or legal requirement shall be deemed deleted therefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this bond shall be construed as a statutory bond and not as a common law bond." The change that would be required if this bond had been written to cover a public improvement project would be just an increase in the period within which to give notice of a claim from 90 days to 120 days.

The interests of HRH protected by notice of the delinquencies of its subcontractor Carlton were not dependent solely or even primarily on such notice as is required by the payment bond. The contract between HRH and Carlton contains provisions addressed to that very issue. Section 6.15, "Reports, Schedules, etc.," contains subdivision (d) which covers the liabilities of Carlton to suppliers or subsubcontractors:

"(d) Whenever required by the Contractor, it shall be the duty of the Subcontractor to file with the Contractor, without charge and within five (5) days of written request, a verified statement, in a form satisfactory to the Contractor, certifying the amounts then due and owing for labor and materials furnished under the terms of this Contract and setting forth therein the subSubcontractors or suppliers who remain unpaid and the amounts due to each."

In the contract provisions relating to the payment of Carlton in response to its monthly submission of requisitions, it is further provided:

"Before each such payment is required, the Subcontractor shall give to the Owner, Contractor and Lender good and sufficient evidence in a form of a Partial Lien Waiver . . . including obtaining same from Subcontractor's suppliers . . . that the premises are free from all liens and claims chargeable to the said Subcontractor" (section 10.1 [a]).

HRH was able to include provisions in its contract with Carlton for its protection. HRH and the defendants determined what notice requirements to include in the payment bond. In contrast, the plaintiff, as a third-party beneficiary, was strictly bound by the terms of the payment bond and the defendants are only chargeable in accordance with the strict terms of the bond (see *Lynbrook Glass & Architectural Metals Corp. v Elite Assoc.*, 225 AD2d 525 [1996]). The construction of time-

limitation provisions in performance bonds has been held to be governed by the usual rules of construction of adhesion contracts, with such time limitations strictly construed against the surety (*see Incorporated Vil. of N. Hills v AVR Links Dev. Corp.*, 33 AD3d 588 [2006]). The time-limitation provisions governing notice in this payment bond should likewise be strictly construed against the defendants. In the common-law bond situation, a surety is not faced with specific notice language required by a statute as found in State Finance Law § 137. A surety who desires notice of nonpayment within 90 days of every delivery in an open account situation could negotiate with a contractor for inclusion of language explicitly requiring such notice in the payment bond, instead of the "last furnished materials" phrase.

To interpret the notice provision in the payment bond in this case to require notice within 90 days of each separate delivery would provide marginal additional protection to HRH beyond that provided for in its contract with Carlton. The impact such interpretation would have on a supplier is no less onerous in a common-law bond situation than the burden identified in *Specialty Prods*. under a statutory bond. The same primary purpose exists for a common-law bond as exists for statutory bonds, the protection of suppliers of labor or material for the project. The claimant in *Specialty Prods*. had made eight separate deliveries, Triboro's claim herein encompasses 78 deliveries to Carlton. The claim process required by the payment bond not only requires notice within 90 days of the last delivery of material, it then requires the claimant to wait 30 days for a response from the contractor and, if no payment is received within those 30 days, to then send a notice to the surety stating a claim is being made under the bond. The surety then has 45 days to respond to the claim. To require a supplier to repeat that process 78 times in order to obtain the promised benefit of full payment for goods it unquestionably provided to the project would indeed be an extraordinarily onerous burden.

In addition to the burden on suppliers, an interpretation of the notice provision to require a notice in connection with each separate delivery could also have a significant negative impact on a contractor and an owner. A $63 million project could well have multiple subcontractors and multiple suppliers to each subcontractor. To require a notice within 90 days of every delivery could result in a flood of notices from wise and conservative suppliers, making it more difficult for the contractor and owner to identify the truly delinquent subcontractor.

The interpretation of the notice provision determined by the Court of Appeals to be applicable under a statutory bond should similarly be applied to the common-law bond issued in this case. Accordingly, we determine that the notice provided by Triboro within 90 days of its last delivery to Carlton was timely without regard to whether Triboro and Carlton had a master contract or were working under an open account. Therefore, we modify the order, on the law, by deleting the provision thereof denying Triboro's motion for summary judgment on the complaint, and substituting therefor a provision granting Triboro's motion; as so modified, the order is affirmed, with costs to the plaintiff.

MILLER, J.P., FISHER and DILLON, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof denying the plaintiff's motion for summary judgment on the complaint, and substituting therefor a provision granting the plaintiff's motion; as so modified, the order is affirmed, with costs to the plaintiff.