# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-171

**TECHE ELECTRIC SUPPLY, L.L.C.**

**VERSUS**

**M.D. DESCANT, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-129-05
HONORABLE ANNE LENNAN SIMON, PRESIDING

\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, J. David Painter and Christopher J. Roy, pro tem, Judges.

**REVERSED AND RENDERED.**

**Edward C. Abell, Jr.**
**The Onebane Law Firm**
**1200 Camellia Street**
**P.O. Box 3507**
**Lafayette, LA 70502**
**(337) 237-2660**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Teche Electric Supply, L.L.C.**

**Russel W. Wray**
**Chris P. Pierce**
**Wray & Pierce, L.L.P.**
**509 St. Louis Street**
**P.O. Box 3238**
**Baton Rouge, LA 70821-3238**
**(225) 334-9200**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **M.D. Descant, Inc., National Fire Insurance Company of Hartford, and**
      **Western Surety Company**

**COOKS, Judge.**

M.D. Descant, a general contractor, entered into a contract with the State of Louisiana for the construction of the Southwest Louisiana War Veterans Home in Jennings, Louisiana. The contract was duly recorded, and National Fire Insurance Company provided a performance and payment bond for the project.

M.D. Descant subcontracted the electrical portion of the project to Kirk Knott Electric, Inc. During the period from April, 2003 through February 17, 2004, Teche Electric Supply, L.L.C., sold electrical materials to Kirk Knott. The bulk of the electrical materials provided by Teche was delivered to the Kirk Knott yard in Carencro and then transported by employees of Kirk Knott to the construction site. During the time frame Teche was supplying electrical materials for the job in question, Kirk Knott filed for bankruptcy.

Not having been paid for supplied electrical materials, Teche filed a *Statement of Lien and Privilege* in the amount of $201,267.68 in the mortgage records against Kirk Knott on April 23, 2004. Teche mailed a notice of nonpayment to the State and to M.D. Descant on May 6, 2004. On June 2, 2004, M.D. Descant filed a *Bond for Removal of Lien*, which substituted a bond of Western Surety Company to secure payment of Teche's outstanding lien. The State of Louisiana accepted the project, with said acceptance recorded on February 14, 2005. On March 1, 2005, Teche filed suit against Defendants, M.D. Descant, National Fire Insurance Company, and Western Surety Company, for the full amount of its statement, interest, attorney fees, and costs.

On June 18, 2007, Defendants filed a motion for summary judgment contending Teche failed to preserve its right to lien the public works project when it failed to furnish notice of nonpayment within 75 days of the delivery of materials as

required by La.R.S. 38:2242(F). Teche filed a cross motion for summary judgment, arguing its letter mailed on May 6, 2004, sufficiently provided notice of nonpayment to the appropriate parties as required by law; and thus, urging it was entitled to judgment as a matter of law.

After a hearing on the motions, the trial court took the matter under advisement. Judgment was rendered denying Defendants' motion for summary judgment and granting Teche's motion for summary judgment. The trial court agreed with the parties that the motions "put before the court the issue of the correct interpretation" of La.R.S. 38:2242(F). The trial court determined that Teche's letter mailed May 6, 2004, preserved its right to file a lien for nonpayment of materials sold by Teche to Kirk Knott. The judgment awarded Teche the sum of $196,298.63, together with legal interest thereon from the date of judicial demand until paid and ten percent of said principal and interest as attorney fees. Defendants have appealed the trial court's judgment, asserting the following assignments of error:

1.    The trial court erred in determining that Teche furnished the notice of nonpayment required by La.R.S. 38:2242(F).

2.    The trial court erred in construing La.R.S. 38:2242(F) to allow *one notice* issued within 75 days of the last day of the month of the *last delivery* to apply to all materials delivered.

3.    The trial court erred in liberally construing La.R.S. 38:2242(F).

4.    The trial court erred in finding that no genuine issue of material fact existed as to the incorporation of the materials into the Project.

5.    The trial court erred in awarding amounts invoiced for freight charges for deliveries made to a location other than the Project site.

6.    The trial court erred in awarding attorney fees.

**ANALYSIS**

In *Hines v. Riceland Drilling Co.*, 04-503, pp. 3-4 (La.App. 3 Cir. 9/29/04), 882 So.2d 1287, 1289-90, *writ denied*, 04-2705 (La.1/07/05), 891 So.2d 681, this Court set forth the law applicable to the appellate review of summary judgments, stating as follows:

> In *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 230-31, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
>
> > Our review of a grant or denial of a motion for summary judgment is *de novo*. *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
> >
> > > The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

*Hines*, 882 So.2d at 1289-90.

As the trial court noted, this appeal involves the correct interpretation of La.R.S. 38:2442, the amended provision of the Louisiana Public Works Act, which in part deals with the time period within which an unpaid materialman must give written notice to a contractor and owner in order to file a lien on a public building

project. Unlike workers and suppliers involved in *private building projects*, similarly situated workers and suppliers engaged by public agencies on building projects cannot protect themselves with liens against public property because liens are not enforceable against publicly-owned property. *State Through Div. of Admin. v. McInnis Bros. Const.*, 97-0742 (La.10/21/97), 701 So.2d 937. As noted by the supreme court in *Wilkin v. Dev Con Builders, Inc.*, 561 So.2d 66, 70 (La.1990) (Citations omitted):

> Because of the need to protect those performing labor and furnishing materials for public works, the Legislature in 1918 passed Act 224, the precursor to current public works statutes, La. R.S. 38:2241 *et seq.*, granting rights to laborers and materialmen involved in public works. The public contract law did not grant its beneficiaries a lien on the public work itself, but gave them, in effect, a "privilege against the unexpended fund in the possession of the authorities with whom the original contract ha[d] been entered into."

> The pertinent sections of La.R.S. 38:2442 provide:

> B. Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.

> . . . .

> F. In addition to the other provisions of this Section, if the materialman has not been paid by the subcontractor and has not sent notice of nonpayment to the general contractor and the owner, then the materialman shall lose his right to file a privilege or lien on the immovable property. The return receipt indicating that certified mail was properly addressed to the last known address of the general contractor and the owner and deposited in the U.S. mail on or before seventy-five days from the last day of the month in which the material was delivered, regardless of whether the certified mail was actually delivered, refused, or unclaimed satisfies the notice provision hereof or no later than the statutory lien period, whichever comes first. The provisions of this Subsection shall apply only to disputes arising out of recorded contracts.

Prior to the passage of subsection F in the 1999 legislative acts, the right to file a

-4-

privilege or lien in the described circumstances only required a statement to be filed in the applicable court records. There was no requirement that notice be sent to the owners and contractors. Subsection F now mandates that owners and contractors be furnished with notice of nonpayment as a prerequisite to the right to file a lien or privilege on the project. Failure to do so results in the materialman "los[ing] his right to file a privilege or lien on the immovable property."

In finding in favor of Teche below, the trial court issued the following reasons for judgment:

> With respect to the timeliness of notice, although *McGinnis, supra.,* the case relied upon by the defendants, clearly states that lien statutes are to be strictly interpreted, the holding of the case contradicts the proposition. The court upheld a lien filed *after* the pre-amendment forty-five day period when the public entity had knowledge of the amount due. Similarly, in *Levingston Supply Co. v. American Employers' Ins. Company*, La.App. 1 Cir. 1968) 216 So.2d 158, the First Circuit court of Appeal liberally interpreted the pre-amendment statute to uphold a lien filed prior to the beginning of the forty-five day period. It appears to this court that *McGinnis*, the sole authority offered by the defendants for a strict interpretation, is not persuasive in this matter.
>
> The court is persuaded by the arguments presented by the plaintiff. Without the 1999 amendment, the materialman's lien could have been timely noticed at any time before March 31, 2005, some eleven months afer the deadline under the amendment. Under the pre-amendment law, a materialman could file his "claim" without reference to dates of delivery. If the legislature had wished to refine the requirement to a claim for each delivery, one may assume they would have done so. The court is also of the opinion that a requirement for notice with each delivery would adversely impact the business relationship between supplier and contractor, and increase bothersome paperwork. Furthermore, the defendants do not contend that they had no knowledge of the non-payment, which fact triggers the equity considerations expressed in *VPP America* [951 So.2d 461]. Equity falls on the side of the unpaid plaintiff.

Subsequent to the trial court's judgment, the Second Circuit Court of Appeal in *Electric Supply Co., Inc. v. Great American Ins. Co., Inc.*, 42,727 (La.App. 2 Cir. 12/12/07), 973 So.2d 827, addressed the application of La.R.S. 38:2242(F). In that case, the unpaid materialman recorded its lien on January 23, 2001 and mailed a copy

to the contractor and owner on the next day. When the claim was not paid, the materialman filed suit against the contractor and owner, who in turn filed a motion to cancel the lien on the ground that the materialman did not comply with La.R.S. 2242(F) when it failed to send notice of nonpayment prior to filing the lien. The trial court agreed with the owner and contractor and ordered that the lien be extinguished and removed from the mortgage records. On appeal, the court noted that "the only issue . . . [was] whether La.R.S. 38:2242(F) requires that notice of nonpayment be given to the general contractor and owner before a materialman files his lien or privilege." *Id.* at 828. The second circuit reasoned as follows:

> In examining La.R.S. 38:2242, we are mindful of the admonition that in general, lien statutes are *stricti juris* and should thus be strictly construed. *Guichard Drilling Co. v. Alpine Energy Services, Inc.*, 94-1275 (La.7/3/95), 657 So.2d 1307. "[P]ublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes." *Wilkin*, 561 So.2d at 71. *See also McInnis Bros. Const.*, supra.

> The first sentence of Subsection (F) is clear: "In addition to the other provisions of this Section, if the materialman has not ... sent notice of nonpayment [by the subcontractor] to the general contractor and the owner, then the materialman shall lose his right to file a privilege or lien on the immovable property." Subsection (F) requires that the materialman must send notice of nonpayment to preserve his right to file a privilege or lien. The reason for this requirement is obvious. A contractor or owner is not always going to be aware of the materialman from whom a subcontractor has obtained materials that the subcontractor has used on a public works project, so forcing the claimant materialman first to give notice to the general contractor and owner places those parties in the position of being able to withhold payment to the subcontractor so as to avoid ultimately having to make a double payment.

> Subsection (F), which was added in 1999, places a notice requirement upon materialmen that is in addition to the requirements applicable to all claimants that are found in Subsection (B); hence, Subsection (F) begins with, "In addition to the other provisions of this Section...."

> Electric Supply counters that the second sentence in Subsection (F) sets forth the period in which notice can be given. However, the second sentence in Subsection (F) apparently only explains how the

notice provision can be satisfied, and the latest date on which the notice can be given assuming a lien or privilege has not yet been filed. In fact, according to this second sentence, the notice period could expire before the end of the 45-day period to make a claim that is set out in Subsection (B): "deposited in the U.S. mail on or before seventy-five days from the last day of the month in which the material was delivered ... satisfies the notice provision hereof or no later than the statutory lien period, whichever comes first."

An additional notice provision for claimants who have contractual privity with a subcontractor, but not with a contractor, is set forth in La. R.S. 38:2247, which states, with our emphasis:

> Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; *except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default*, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.

We note that the above-referenced notice is not the same as the notice required of materialmen found in Subsection (F) of La. R.S. 38:2242. The notice of nonpayment in Subsection (F) is to be given to the owner and contractor to preserve the right to file a claim, while the notice referenced in La. R.S. 38:2247 is to be given to the contractor to preserve the right of action against the contractor or the surety. In addition, the notice required in Subsection (F) would be untimely if it was given before a claim was filed but after 75 days had elapsed since the last day of the month in which material was delivered, even if the 45-day statutory lien period had not elapsed. The notice requirement found in La. R.S. 38:2247 references only the 45-day statutory lien period provided in La. R.S. 38:2242(B)

-7-

In the present case, Teche filed its lien on April 23, 2004 and furnished a copy of the lien and made demand by its letter dated May 3, 2004. Teche does not attempt to factually distinguish *Electric Supply*, but rather argues that the Second Circuit's holding in that case is "in error, that it contradicts prior interpretations of R.S. 38:2242(F), defeats the intent of the statute, and should not be followed by this Honorable Court." We do not agree.

Under the previous law, a materialman was not required to furnish any notice of nonpayment. La.R.S. 38:2242(F) clearly changed the law to require a materialman to furnish notice of nonpayment to preserve the right to file a lien. To interpret La.R.S. 38:2242(F) as Teche argues, that it allows for a post-filing notice, would defeat the clear intent of that statute and revert the law to its pre-amendment status. La.R.S. 38:2242(F) clearly provides that the failure to send notice of nonpayment "shall" cause the loss of the right to file a lien.

Teche relies on the Second Circuit case of *VPP America, Inc. v. Design Build Development Services, Inc.*, 41,652 (La.App. 2 Cir. 1/31/07), 951 So.2d 461. In that case, the lien was filed by the materialman on July 20, 1999, and the letter demanding payment was not sent until August 29, 2000. The Second Circuit concluded the materialman was entitled to recover the money and that the sequence of the lien being filed before the notice was sent was not fatal to the claim. However, as appellants point out, *VPP America* is clearly distinguishable from the present case. The court in *VPP America* did not discuss La.R.S. 38:2242(F) because that statute did not become effective until *after* the last delivery of materials occurred in that case. Thus, the court in *VPP America* was still bound by the prior law.

Teche argues equity demands that M.D. Descant be ordered to pay for the electrical supplies, as they will unfairly profit if they are not forced to pay. Teche's

cries for equity apparently extend only to materialmen and not contractors and owners. As noted by appellants in their brief, a ruling designed solely to assure compensation for materialmen may create a double payment scenario. If a subcontractor receives payment from the contractor but fails to pay his materialman, then a lien filed by the materialman may cause the contractor to pay twice for the same materials. As the court noted in *Electric Supply*, "forcing the claimant materialman first to give notice to the general contractor and owner places those parties in the position of being able to withhold payment to the subcontractor so as to avoid ultimately having to make a double payment." *Id.* at 829-30.

We find the second circuit's ruling in *Electric Supply* applicable to this case. Teche failed to furnish notice of nonpayment prior to filing its lien. Thus, under La.R.S. 38:2242(F), the failure to meet the notice requirements by Teche causes a "loss" of the "right to file a lien or privilege." As a result, Teche has no claim against Defendants. Therefore, the trial court erred in granting Teche's motion for summary judgment.

## DECREE

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of Teche Electric. Judgment is hereby rendered in favor of M.D. Descant dismissing Teche Electric's petition with prejudice. All costs of this appeal are assessed against Teche Electric.

**REVERSED AND RENDERED.**