THERIOT, J.
| ¡.This is an appeal of the trial court’s interpretation of the materialman’s notice-of-nonpayment requirement found in the Louisiana Public Works Act (LPWA) at La. R.S. 38:2242(F). The question presented is whether a single notice given within seventy-five days of the last delivery of roofing supply materials for a public works project was timely as to the supplier’s claim for payment on all materials delivered pursuant to the open-account arrangement. For the following reasons, we affirm the district court’s judgment.
FACTS AND PROCEDURAL HISTORY
The relevant facts are not in dispute. Plaintiff, J. Reed Constructors, Inc. (J. Reed), was the general contractor on a public works project for the owner, Ascension Parish School Board (School Board), which included a roof replacement at East Ascension High School. In connection *754 ■with the project, J. Reed entered into several subcontracts, one of which involved a roofing subcontractor, A & L Systems, Inc. (A & L). A & L purchased roofing supplies and materials on open account from defendant, Roofing Supply Group, L.L.C. (RSG). At various times throughout June, July, August, and September 2011, with the last delivery occurring on September 26, 2011, RSG delivered roofing supplies and materials to the project site pursuant to multiple purchase orders by A & L. Each delivery was accompanied by an invoice reflecting due date terms of “NET 2ND 10TH,” along with an actual due date for payment that was the tenth day of the second month after each delivery. A & L failed to pay RSG for all of the supplies and materials, which at the end of the four months of deliveries the unpaid amount totaled $268,056.29.
On December 8, 2011, RSG sent written notice to J. Reed and the School Board, informing the general contractor and the project owner of A & L’s nonpayment of invoices in connection with the deliveries of roofing supplies and materials for the public works project. It is undisputed that the notice-oflnonpayments letter was received by J. Reed and the School Board within seventy-five days of the date of RSG’s last delivery date. When RSG did not receive payment after notifying J. Reed and the School Board, RSG filed and recorded its materialman’s claim in the amount of $268,056.29 on December 22, 2011.
In response, J. Reed filed a Rule to Show Cause in the 23rd Judicial District Court as to why RSG’s lien claim should not be cancelled. J. Reed maintained that RSG’s notice of nonpayment was untimely under the LPWA, contending that the notice must be provided within seventy-five days of each separate month in which materials are delivered in order to preserve a materialman’s claim; thus, according to J. Reed, RSG lost its right to file a lien as to deliveries made in June, July, and August 2011. RSG opposed J. Reed’s rule, arguing that the LPWA does not require multiple notices of nonpayment, but rather, a single notice is required to be given within seventy-five days from the last day of the last month in which material is delivered. After a hearing in which evidence of the invoices and purchase orders was introduced, the district court ruled in favor of J. Reed, determining that RSG’s notice was untimely as to all deliveries made before September 2011, and therefore, $148,188.00 of RSG’s claim was not allowed.
The district court signed a judgment on July 26, 2012, which states in part “It is the further finding of this Court that all of the remaining invoices, totaling $119,867.42, are properly a part of the claim filed by Roofing Supply Group in that the notice to J. Reed Constructors, Inc. was timely as to those deliveries.” The district court denied RSG’s motion for new trial in a separate judgment signed on September 25, 2012. RSG appealed both judgments. RSG argues that the district court erred in interpreting La. R.S. 38:2242(F) to require monthly or multiple notices in order to preserve the right to file a lien against a public works project for unpaid supplies and materials. RSG also assigned error to the district court’s denial of its motion for new trial; however, RSG did not brief the alleged error regarding the motion for new trial or point to any evidence to suggest the district |4court abused its discretion in denying the motion for new trial. When an appellant fails to brief an assignment of error, the appellate court may deem that assignment abandoned. See Uniform Rules — Courts of Appeal, Rule 2-12.4. We find the assignment of error pertaining to the denial of *755 the motion for new trial abandoned. Accordingly, we will only consider RSG’s specification of error regarding the district court’s interpretation of the notiee-of-non-payment requirement found in La. R.S. 38:2242(F).
LAW AND ANALYSIS
The judgment of the district court was based on its interpretation of La. R.S. 38:2242(F). The interpretation of a statute is a question of law. Clements v. Folse ex ret Succession of Clements, 2001-1970, p. 5 (La.App. 1 Cir. 8/14/02), 830 So.2d 307, 312, writ denied, 2002-2328 (La.11/15/02), 829 So.2d 437. Appellate review of questions of law is simply to determine whether the district court was legally correct or legally incorrect. Id. On legal issues, the appellate court gives no special weight to the findings of the district court, but exercises its constitutional duty to review questions of law de novo and renders judgment on the record. Id.; Times Picayune Pub. Corp. v. Board of Sup’rs of Louisiana State University, 2002-2551, p. 6 (La.App. 1 Cir. 5/9/03), 845 So.2d 599, 605, writ denied, 2003-1589 (La.9/5/03), 852 So.2d 1044.
In Louisiana, public construction contracts, are governed by the LPWA, La. R.S. 38:2241-3410, which is sui generis and provides exclusive remedies to parties in litigation arising out of a public work. State Through Div. of Admin, v. McInnis Bros. Const., 97-0742, p. 9 (La.10/21/97), 701 So.2d 937, 944. “[Pjublic contract laws are to be strictly construed such that the privileges granted are not extended beyond the statutes.” Id., quoting Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 71 (La.1990). In the LPWA, a “claimant” includes any person to whom money is due pursuant to a contract with the owner, contractor, or subcontractor for furnishing materials or supplies for construction of any public works. La. R.S. |S38:2242(A). Additionally, any claimant “may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work ... file a sworn statement of the amount due him ... and record it....” La. R.S. 38:2242(B). However, the materi-alman claimant must first comply with the notice and recordation requirements of La. R.S. 38:2242(B) and (F) in order to preserve the right to file a privilege or lien. See Interstate School Supply Co. v. Guitreau’s Const. & Consulting Co., Inc., 542 So.2d 138 (La.App. 1 Cir.1989); Teche Elec. Supply, L.L.C. v. M.D. Descant, Inc., 2008-171, p. 9 (LaApp. 3 Cir. 12/11/08), 2 So.3d 516, 522, writ denied, 2009-0086 (La.3/27/09), 5 So.3d 141; Electric Supply Co., Inc. v. Great American Ins. Co., Inc., 42,727, pp. 5-6 (La.App. 2 Cir. 12/12/07), 973 So.2d 827, 830-31.
The relevant portion of the LPWA that specifically pertains to the right to file a materialman’s lien is outlined at La. R.S. 38:2242(7),[1] which provides:
F. In addition to the other provisions of this Section, if the materialman has not been paid by the subcontractor and has not sent notice of nonpayment to the general contractor and the owner, then the materialman shall lose his right to file a privilege or lien on the immovable property. The return receipt indicating that certified mail was properly addressed to the last known address of the general contractor and the owner and deposited in the U.S. mail on or before seventy-five days from the last day of the month in which the material was delivered, regardless of whether the certified mail was actually delivered, refused, or unclaimed satisfies the notice provision hereof or no later than the *756 statutory lien period, whichever comes first. The provisions of this Subsection shall apply only to disputes arising out of recorded contracts. (Emphasis added.)
Clearly, notice-of-nonpayment to the general contractor and owner is required by La. R.S. 38:2242(F) if the materialman desires to preserve his lien.
Although interpretation of the notice-of-nonpayment requirement in La. R.S. 38:2242(F) presents a res nova issue, our inquiry is guided by well-established principles of statutory interpretation. The function of statutory interpretation and the construction to be given to legislative acts rests with the judiciary. Livingston Parish Council on Aging v. Graves, 2012-0232, p. 3 (La.12/4/12), 105 So.3d 683,1,685. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature, as well as determine the reasons that prompted the legislature to enact the law to begin with. Id. at p. 4; State v. Dick, 2006-2223, pp. 8-9 (La.1/26/07), 951 So.2d 124, 130. The starting point in the interpretation of any statute is the language of the statute itself. Dick at p. 9, 951 So.2d at 130. Words and phrases shall be read in context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3; Moreno v. Entergy Corp., 2012-0097, p. 12 (La.12/4/12), 105 So.3d 40, 48. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11.
We find La. R.S. 38:2242(F) is clear and unambiguous. To preserve his right to file a privilege or lien on the immovable property, the materialman SHALL deposit in the U.S. mail, via certified mail, notice of nonpayment before seventy-five days from the last day of the month in which material was delivered or no later than the statutory lien period, whichever comes first. Regardless of the month of delivery or the number of deliveries, the seventy-five-day period commences on the last day of that month.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. It is not the function of the judicial branch to legislate by inserting provisions into statutes where the legislature has chosen not to do so. See Carter v. Duke, 2005-0390, p. 10 (La.1/19/06), 921 So.2d 963, 970. It is for the legislative branch to remedy the deficiencies in the statutory scheme, if it should so desire. Foti v. Holliday, 2009-0093, p. 13 (La.10/30/09), 27 So.3d 813, 821.
CONCLUSION
Accordingly, we affirm the judgment of the district court. All costs of this appeal are to be paid by defendant-appellant, Roofing Supply Group, L.L.C.
AFFIRMED.
HIGGINBOTHAM, J„ Dissents and Assigns Reasons.
HIGGINBOTHAM, J.
|;I respectfully disagree with the majority opinion, and for the following reasons, I would reverse the district court’s judgment, because I find that the supplier’s single notice-of-nonpayment within 75 days of the last delivery was timely as to all unpaid deliveries of materials.
The statute at issue is ambiguous. It is not clear whether subsection (F) of La. R.S. 38:2242 requires that only one notice-of-nonpayment as to all deliveries is required to be issued within 75 days of the last day of the month of the last delivery or whether multiple notices-of-nonpayment must be sent within 75 days of each month *757 in which material is delivered. I find that the relevant portion of subsection F is poorly drafted and is susceptible to different interpretations. The ambiguity in the meaning and grammatical structure of the provision makes both parties’ constructions of the statute at least possible, when viewing the disputed section in isolation. Either, of the stated interpretations requires the insertion of extra or different words to reach the desired result; i.e., inserting “all of’ before “the material was delivered,” or “notices” in place of “notice,” and “each month” instead of “the month.” However, as the majority points out, it is not the function of the judicial branch to legislate by inserting provisions into statutes where the legislature has chosen not to do so. Carter v. Duke, 2005-0390 (La.1/19/06), 921 So.2d 963, 970. It is for the legislative branch to remedy the deficiencies in the ^statutory scheme, if it should so desire. Foti v. Holliday, 2009-0093 (La.10/30/09), 27 So.3d 813, 821.
This particular issue — the timeliness of a notice-of-nonpayment under an open account arrangement between a supplier and subcontractor on a public works project— has never been addressed by a Louisiana state court. In Teche Elec. Supply, L.L.C. v. M.D. Descant, Inc., 2008-171 (La.App. 3d Cir. 12/11/08), 2 So.3d 516, 518, writ denied, 2009-0086 (La.3/27/09), 5 So.3d 141, the issue was listed as an assignment of error raised by the defendants; however, the case was resolved without reaching the merits of the issue, because the defendants in that case failed to furnish any notice of nonpayment before they filed their lien. Id., 2 So.3d at 522. In WP America, Inc. v. Design Build Development Services, Inc., 41,652 (La.App.2d Cir.1/31/07), 951 So.2d 461, 468, the facts were similar in that a roofing subcontractor obtained supplies from a roofing supply company pursuant to an open account arrangement on a public works project involving a school addition. In that case, the materialman’s lien was filed before the letter demanding payment was sent to the general contractor; however, the court did not discuss the notice-of-nonpayment requirement in subsection (F), because the 1999 amendment to the statute did not become effective until after the last delivery of materials occurred in that case. Thus, the court in WP America, 951 So.2d at 469-470, was bound by the prior law when it held that the supplier was entitled to recover for all of the material it furnished for the public works project even though the supplier filed the hen before sending the additional notice required by a different statute (La. R.S. 38:2247). See Teche Elec. Supply, 2 So.3d at 522.
Our res nova inquiry into the proper interpretation of La. R.S. 38:2242(F) is guided by well-established principles of statutory interpretation that are designed to ascertain and enforce the intent of the legislature, as well as determine the reasons that prompted the legislature to enact the law to begin with. See \%Livingston Parish Council on Aging v. Graves, 2012-0232 (La.12/4/12), 105 So.3d 683, 685; State v. Dick, 2006-2223 (La.1/26/07), 951 So.2d 124, 130. Thus, when the judiciary applies a statute to a specific set of facts, it is necessary to interpret the statute in a manner that is consistent with the legislative intent.
The Louisiana Supreme Court has already determined many years ago that the LPWA is intended to protect those supplying labor and furnishing materials for public works projects. See Wilkin v. Dev Con Builders, Inc., 561 So.2d 66, 70 (La.1990). See also Slagle-Johnson Lumber Co., Inc. v. Landis Const. Co., Inc., 379 So.2d 479, 486 n. ** (La.1979) (on rehearing). The statute provides a method by which a ma-terialman can recover sums due for materials furnished to a subcontractor on a *758 public works project. While protecting those who supply labor and furnish materials, the risk of loss is shifted to the general contractor and the surety. It is with this stated legislative intent in mind, that we should interpret the notice-of-nonpayment provision in La. R.S. 38:2242(F) to determine whether the materialman’s statutory notice-of-nonpayment provision is triggered by each month of unpaid deliveries or by the month of the final delivery of unpaid materials.
The majority correctly states that the starting point in the interpretation of any statute is the language of the statute itself Dick, 951 So.2d at 130. Furthermore, words and phrases shall be read in context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3; Moreno v. Entergy Corp., 2012-0097 (La.12/4/12), 105 So.3d 40, 48. When a law is susceptible to different meanings, “it must be interpreted as having the meaning that best conforms to the purpose of the law.” La. Civ.Code art. 10. Moreover, “[w]hen the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.” La. Civ.Code art. 12. Courts should give effect to all parts of a statute |4and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. SWAT 21). Shreveport Bossier, Inc. v. Bond, 2000-1695 (La.6/29/01), 808 So.2d 294, 302. Additionally, courts should avoid constructions that render legislation absurd; rather, statutes should be interpreted in a manner that renders the meaning rational, sensible, and logical. State Through Dept, of Public Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Com’n and Horseshoe Entertainment, 94-1872 (La.5/22/95), 655 So.2d 292, 302.
With these principles in mind, my focus turns to the controversial and confusing text found in subsection (F), stating that the materialman’s notice-of-nonpayment sent to the general contractor and the owner “on or before seventy-five days from the last day of the month in which the material was delivered ... satisfies the notice provision[,]” thereby preserving the materialman’s right to file a lien on the immovable property that is the subject of the public works project. La. R.S. 38:2242(F) (emphasis added). Since there is no Louisiana case interpreting this particular statute under an open account arrangement. I have looked for guidance in federal case law, where the federal courts have interpreted a parallel statute, the “Miller Act” at 40 U.S.C. § 3133(b)(2) (formerly cited as 40 U.S.C. § 270(b)), along with similar provisions in other states’ statutes.[1] The federal case law is helpful since the various versions of individual state statutes strongly resemble the model Miller Act, all with the same remedial purpose of protecting suppliers of labor and materials.
Like the LPWA, the Miller Act requires written notice to the prime contractor by a claimant who has a contractual relationship with a subcontractor on a public works project and has not received payment for delivery of materials. | ^However, rather than 75 days from “the last day of the month in which the material was delivered,” the Miller Act requires the notice to be given within 90 days from the date the *759 claimant “performed the last labor or furnished or supplied the last of the material for which the claim is made.” See 40 U.S.C. § 8133(B)(2) (emphasis supplied). Nevertheless, under both the Miller Act and the LPWA, fulfilling the notice provision is a strict condition precedent to recovery. See U.S. for Use and Ben. of Water Works Supply Corp. v. George Hyman Const. Co., 131 F.3d 28, 31 (1st Cir. 1997). The notice provision serves an important purpose: it establishes a firm date after which the general contractor may pay its subcontractors without fear of further liability to the materialmen or suppliers of those subcontractors. Id., 131 F.3d at 32.
While there has been a split in federal decisions throughout the country, I find the better view holds that if a Miller Act claimant is making a series of deliveries under an open account arrangement, that claimant need only give notice-of-nonpayment within 90 days of the last delivery to recover for all previous deliveries under the contract, as long as there has not been a delivery gap of over 90 days. See Specialty Products & Insulation Co. v. St. Paul Fire & Marine Ins. Co., 99 N.Y.2d 459, 465, 788 N.E.2d 604, 607, 758 N.Y.S.2d 255, 258 (2003). By far, the weight of authority in federal case law holds that notice for the entire unpaid portion for deliveries made on an open account runs from the last delivery of materials. See George Hyman Const., 131 F.3d at 34; U.S. for Use of A & M Petroleum, Inc. v. Santa Fe Engineers, Inc., 822 F.2d 547, 548 (5th Cir.1987).
I agree with this interpretation, especially when considered alongside the legislative objective of protecting and promoting prompt payment to laborers and material suppliers. See Specialty Products, 99N.Y.2d at 465, 788 N.E.2d at 607, 758 N.Y.S.2d at 258. Additionally, I note that this is the conclusion of most | f,federal courts considering this same issue under the Miller Act when comparing similar state statutes. Id., 99 N.Y.2d at 466, 788 N.E.2d at 608, 758 N.Y.S.2d at 259, n. 6. This conclusion places the general contractors’ need for fixing a final liability date as secondary to the protection of laborers and material suppliers. Id. See also Noland Co. v. Allied Contractors, Inc., 273 F.2d 917, 920-921 (4th Cir.1959) (where the court reasoned that, although a strict reading of the notice provision might offer more protection to the general contractor, the goal of a specific provision with ambiguities must take a back seat to the purpose of the overall statute, which is to provide recovery for suppliers who have provided materials but not received compensation).
I find that this interpretation of the statute best comports with the purpose of the LPWA as a whole and prevents absurd results. For instance, it would be absurd to require a materialman to provide notice at the end of each month that an unpaid delivery is made when the due date for the supplies and materials ordered pursuant to an open account arrangement are not due until two months following the delivery, as in the case before us with the due date term of “NET 2ND 10TH.” In addition to the absurdity of the requirement, it would be unduly burdensome on suppliers using open accounts to require them to give separate notices-of-nonpayment within 75 days of each month that unpaid materials are delivered, when they have continuous and ongoing invoices for future deliveries and before they are even aware that a previous delivery is past due. A material-man cannot give notice for unpaid supplies and materials when the invoiced amounts have not had time to accrue. Such a construction, requiring repetitious notices abrogates much of the broad protection given materialmen by the statute.
*760 For these reasons, I find that La. R.S. 88:2442(F) requires a materialman’s notice-of-nonpayment concerning deliveries pursuant to an open account arrangement with a subcontractor to be sent to the general contractor and owner |7within 75 days of the last day of the month in which all of the materials are delivered for the public works project, or in other words, when the claim for unpaid deliveries is mature because the supplier has made its final delivery.[2] Thus, RSG’s single notice-of-nonpayment was timely as to all unpaid deliveries in this case, and the district court erred in disallowing the full amount owed for the unpaid materials. I believe this result is in keeping with the legislature’s purpose in enacting the LPWA: to protect the interests of those who supply materials to public works projects with a limit on the time for enforcing the materi-alman’s claim for unpaid materials.
Accordingly, I respectfully dissent from the majority and would reverse the judgment of the district court and render judgment in favor of RSG for the full amount past due, $268,056,29, for the supplies they delivered to the public works project.[3]

. Subsection F was added by La. Acts 1999, No. 1134, § 2.

. The Miller Act and its predecessor, the Heard Act, are the federal equivalents to our own public contract law. See Wilkin, 561 So.2d at 71. Although not binding, I find jurisprudence from the federal courts interpreting the similar federal statute to be extremely persuasive in this matter.

. This interpretation is consistent with the language in subsection (B) of the same statute, where the claimant may only file a claim "after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor!!]” See La. R.S. 38:2242(B) (emphasis added). The record sub judice does not contain evidence of the date of the recorded acceptance of this public work, and the parties have not made an issue of whether RSG timely filed its statutory lien. Because of this lack of evidence, the additional language in La. R.S. 38:2242(F), "or no later than the statutory lien period, whichever comes first[,j” is not relevant to the analysis.

. The record contains no indication that any of the invoices or charges for the roofing supplies and materials was ever disputed.